262 N.J. Super. 544 (1993)
621 A.2d 522
LES GERTRUDE ASSOCIATES, PLAINTIFF-APPELLANT,
v.
CARMEN WALKO AND JOSEPH WALKO, DEFENDANTS-RESPONDENTS CROSS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Submitted February 9, 1993.
Decided March 8, 1993.
*546 Before Judges DRIER, SKILLMAN and VILLANUEVA.
Schottland, Vernon, Aaron, Plaza & Costanza, attorneys for appellant (Barth F. Aaron, of counsel and on the brief).
Ocean-Monmouth Legal Services, Inc., attorneys for respondent (Andrea Auerbach, Staff Attorney; Joseph R. Miele, on the brief).
The opinion of the court was delivered by VILLANUEVA, J.S.C. (temporarily assigned).
Plaintiff appeals from a Special Civil Part judgment dismissing its summary dispossess action, which was based upon the tenant's theft of money from the plaintiff, because the judge found that the action was commenced in retaliation for defendants' filing a complaint before the Rent Leveling Board. Defendants have cross-appealed[1] from the court's determination that such conduct constitutes a sufficient ground for eviction pursuant to N.J.S.A. 2A:18-61.1(c). We affirm.
Defendants Carmen Walko and her son, Joseph Walko, were tenants in the apartment complex owned by plaintiff Les Gertrude Associates. On June 2, 1991, through surveillance, Joseph Walko ("Walko") was observed unlawfully taking money from the coin boxes of a coin-operated washer and dryer machine in the laundry room of the apartment complex. At no time during the commission of the theft did Walko cause any damage to the machines, coin boxes or any of the plaintiff's property. When confronted, he admitted the theft. Walko and plaintiff reached an agreement to settle the theft wherein it was agreed that to satisfy the loss Walko would make restitution *547 for the amount of the theft and the cost of surveillance. As part of the agreement, a new lease was to be signed.
On June 19, 1991, plaintiff sent defendants a proposed one-year lease which was to commence on September 1, 1991. This lease, however, provided for a rent increase of $182.88 per month, an amount far in excess of that allowed by the local Rent Leveling Board. In fact, defendants' rent under the new lease would be $750, an amount equivalent to what a new tenant would have to pay if he replaced defendants as a tenant. Thus, despite Walko's theft, the plaintiff, via the proposed lease, indicated a willingness to continue their landlord/tenant relationship for an additional lease term as long as the tenants were willing to pay the increased rental.
Due to the substantial rent increase proposed by the plaintiff, defendants refused to sign the proposed lease and filed a complaint with the Borough of Red Bank Rent Leveling Board on or about July 18, 1991, duly mailing a copy of the complaint to the plaintiff. Although plaintiff denied receiving the complaint, the judge found otherwise.
On July 23, 1991, plaintiff filed a complaint in Red Bank Municipal Court charging Joseph Walko with the theft. On July 24, 1991, plaintiff, without explanation, sent the defendants a letter stating that their current lease would not be renewed upon its expiration on September 15, 1991.
Despite a determination by the Rent Leveling Board that plaintiff was duly notified of said complaint, plaintiff failed to appear at the scheduled September 26, 1991 hearing. By decision dated October 24, 1991, the Rent Leveling Board determined that plaintiff's attempted rent increase of $182.88 per month was unlawful, and that the maximum allowable increase was only $18.14 per month.
On October 15, 1991, Walko appeared in Municipal Court and pled guilty to the theft. Walko attempted to have the guilty plea entered conditionally so that it could not be used in a civil proceeding. However, the municipal court judge would not *548 allow such a condition. See R. 7:4-2(b). At that time, plaintiff acknowledged that it had received full restitution.
On October 21, 1991, plaintiff served defendants with a notice to quit based upon an alleged violation of N.J.S.A. 2A:18-61.1(c). On October 25, 1991, plaintiff filed this complaint in tenancy for possession of the premises.
The judge found that "[t]here is no question the defendant committed a wrong against the premises by committing the theft" and, therefore, he concluded that the theft formulated a proper basis for this action, pursuant to N.J.S.A. 2A:18-61.1(c). However, the judge concluded that "plaintiff's action in bringing this suit was in retaliation for tenants' conduct of filing a complaint with the Red Bank Rent Leveling Board." Therefore, he ruled in favor of the defendants.

I.
N.J.S.A. 2A:18-61.1 was enacted in response to a legislative recognition that residential tenants frequently have been unfairly and arbitrarily ousted from housing quarters in which they have been comfortable and where they have not caused any problems. Stamboulos v. McKee, 134 N.J. Super. 567, 572, 342 A.2d 529 (App.Div. 1975). The purpose of the Anti-Eviction Act was not to eliminate evictions but to limit them to reasonable grounds. Floral Park Tenants Ass'n v. Project Holding, Inc., 152 N.J. Super. 582, 591, 378 A.2d 266 (Ch.Div. 1977), aff'd 166 N.J. Super. 354, 399 A.2d 1033 (App. Div.), certif. denied, 81 N.J. 278, 405 A.2d 823 (1979). Thus, the intent of the legislature is to limit the eviction of tenants by landlords to the grounds enumerated in the statute. Although the Anti-Eviction Act is to be strictly construed, its construction is to be governed by the "common sense of the situation." Bradley v. Rapp, 132 N.J. Super. 429, 433, 334 A.2d 61 (App. Div. 1975), citing, Jersey City Chapter of Property Owner's Protective Assoc. v. City Council, 55 N.J. 86, 100, 259 A.2d 698 (1969). Any interpretation, however, must neither contravene *549 the intent of the Legislature nor the policies implicit in the statute. See Matter of Sussex County Mun. Utilities Authority, 198 N.J. Super. 214, 486 A.2d 932 (App.Div.), certif. denied, 101 N.J. 267, 501 A.2d 934 (1985). In the instant case, strict construction of the statute and common sense of the situation are congruous.
N.J.S.A. 2A:18-61.1(c) clearly states that ground for eviction will lie where there has been "... destruction, damage or injury to the premises." The issue herein is whether this phrase encompasses a theft where no measurable physical damage to the premises has occurred. The legislative intent of N.J.S.A. 2A:18-61.1(c) requires actual damage to the landlord's property for there to be a cause of action for eviction. Plaintiff's reliance on the scholastic definitions of injury espoused in Black's Law Dictionary and the definition of injury as used in the Tort Claims Act, N.J.S.A. 59:1-1 et seq., is misplaced. Using their definitions in construing this statute would be contrary to the plain meaning of the statute and serve only to undermine the true legislative intent of the Anti-Eviction Statute. A reading of the statute clearly indicates that it is designed to provide recourse to a landlord for the physical destruction of his property. This is evidenced in the Legislature's modifying "destruction, damage or injury" with the phrase "to the premises."
There are some minor thefts, such as this one, that pose no danger to the other tenants. There is no indication that eviction is necessary to protect the premises or the other tenants. See Housing Auth. of City of Newark v. Jones, 204 N.J. Super. 600, 499 A.2d 1020 (App.Div. 1985). The best proof that such protection was not needed is plaintiff's decision to retain defendants as tenants, conditioned on their paying a higher rental.
The Legislature amended the statute, effective January 12, 1990, to authorize eviction when the tenant has been convicted of certain crimes, such as illegal drug offenses and assaultive behavior, N.J.S.A. 2A:18-61.1(n) and (o), or liable in a civil *550 action arising therefrom, N.J.S.A. 2A:18-61.1(p). The Legislature did not provide an additional ground: theft from the landlord or his agent.
Plaintiff did not satisfy its burden of proof for a cause of action under N.J.S.A. 2A:18-61.1(c).

II.
Although the other issue, whether the defendants' affirmative defense of retaliation was sustained, has become moot, we will address it. N.J.S.A. 2A:42-10.10 prohibits the landlord from evicting a tenant, "[a]s a reprisal for the tenant's efforts to secure or enforce any rights ... under the laws of the State of New Jersey or its governmental subdivisions ..." Section 10.12 of the statute establishes a rebuttable presumption of retaliation if tenant engages in any activity described in the statute. The landlord can overcome this presumption only by showing that the eviction proceeding was commenced independently of any consideration of protected activities the tenant may have engaged in. Even where a landlord "considers as one of the factors favoring that decision the activities of the tenant described in N.J.S.A. 2A:42-10.10, then the notice to quit is a `reprisal' within the meaning of the act, although other factors may also be present or even dominant." Silberg v. Lipscomb, 117 N.J. Super. 491, 496, 285 A.2d 86 (Cty.Dist.Ct. 1971).
It is clear that after the theft plaintiff was amenable to having the defendants remain as tenants because it prepared a new lease to begin on September 1, 1991, and forwarded it to the defendants. However, it was only after defendants challenged the rent increase of $182.88 in the proposed new lease and filed a complaint with the local Rent Leveling Board that the plaintiff sent a notice terminating defendants' tenancy and instituted criminal proceedings.
There was substantial credible evidence to support the trial judge's finding that the plaintiff's dispossess action was taken *551 in retaliation for defendants' filing the complaint with the local Rent Leveling Board.
Affirmed. Defendants' cross-appeal is dismissed.
NOTES
[1] There was no basis for the cross-appeal because defendants were merely asserting an alternative ground to uphold the judgment in their favor.