893 A.2d 46 (2006)
383 N.J. Super. 639
CITY OF EAST ORANGE, a Municipal Corporation in the County of Essex and State of New Jersey, Plaintiff-Respondent,
v.
Susan Evelyn KYNOR, Owner Block 62, Lot 14, 111 North 17th Street, Assessed to 111 North 17th Street, East Orange, New Jersey, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued January 11, 2006.
Decided March 10, 2006.
*47 Susan Evelyn Kynor, appellant, argued pro se.
Gerard C. Tamburino, North Caldwell, argued the cause for respondent (Sanford E. Chernin, Somerville, of counsel and on the brief).
Before Judges STERN, PARKER and MINIMAN.[1]
The opinion of the court was delivered by
PARKER, J.A.D.
Defendant Susan Evelyn Kynor is the owner of Block 62, Lot 14 in the City of East Orange (City). Defendant's property was one of a number of properties on which the City foreclosed for delinquent taxes. She appeals from an order entered on March 16, 2005 denying her motion to vacate the final judgment of foreclosure and ordering her not to file any further motions in the action without approval of the Essex County Assignment Judge. We reverse and remand.
The property at issue has been in defendant's family since 1903. It was transferred to defendant from her mother's estate on November 13, 2001. Two days later, on November 15, a tax sale certificate was issued transferring ownership of the property to the City due to delinquent municipal taxes. On March 21, *48 2003, the City filed a complaint to foreclose on the property.
Thereafter, defendant filed a "motion to show cause" seeking to compel the City to allow her to redeem the tax sale certificate for the amount listed in the resolution adopted by the City in August 2002 and the notice published in the Star-Ledger on April 2, 2003, $5,056.16, plus interest and costs. Defendant further sought to limit the City's claim for attorneys fees to $350.
On September 17, 2003, the trial court denied defendant's application, struck her answer and transferred the matter to the foreclosure unit to proceed as an uncontested matter in accordance with R. 4:64-1.
Defendant's application for a stay of that order was denied by the trial court on November 19, 2003. She appealed and we denied her motion for a stay on March 24, 2004. On June 2, 2004, the Supreme Court denied her motion for a stay pending appeal.
On June 29, 2004, we affirmed the trial court's decision denying defendant's "motion to show cause," stating that the trial judge's September 18, 2003 letter opinion "appear[ed] to have answered all the arguments presented on appeal."
On July 16, 2004, a final judgment of foreclosure was entered on the property. Thereafter, defendant moved before the Supreme Court for "reconsideration of her motion for leave to appeal." This application was denied on July 22, 2004. Defendant then moved for reconsideration of our decision, which we denied. Defendant's petition for certification was denied by the Supreme Court on November 10, 2004. On December 10, 2004, the trial court denied defendant's motion to stay its order of September 17, 2003 pending appeal. On that same date, December 10, the trial court denied defendant's motion to have the Essex County Register expunge the transfer of the property to the City. The trial judge stated that the motion was denied because:
Defendant's arguments are of a constitutional nature not previously raised before this court and should properly be addressed in her Petition for Certiorari to the United States Supreme Court.
Still not deterred, defendant moved for reconsideration and clarification of the Supreme Court's denial of certification. Those motions were denied on January 11, 2005.
Defendant then moved to vacate the final judgment of foreclosure. That motion was denied by the trial court on March 16, 2005, in an order that included a provision prohibiting defendant from filing any further applications on this matter to the Essex County Superior Court without first obtaining approval of the assignment judge. The March 16, 2005 order is the subject of this appeal.
In denying defendant's motion, the trial judge indicated that she did not believe defendant met the requirements to vacate the judgment under R. 4:50-1(f):
The situations that the rule was intended to cover are truly exceptional cases that implicate a public policy []. The public policy that underlies the tax foreclosure laws unfortunately go[] in favor of the City and not you.
....
It's just the operation of the tax laws. Among those [are] they don't have to accept installment payments. The law doesn't provide for that. They don't have to accept anything other than a lump sum.
....
And I am at the point where [I] think that you should not be permitted to file motions anymore ... with this Court. It's starting to become a nuisance.... *49 [A]ny further motions to this Court ... have to be with the approval of the Assignment Judge of Essex County.
In this appeal, defendant argues that the trial judge erred (1) in denying her motion to vacate the final judgment under R. 4:50-1(f); and (2) in ordering her to obtain the approval of the assignment judge before filing further applications.

DISCUSSION
At the outset, we note that defendant has represented herself throughout this litigation and, although articulate, she is not educated in the law. While her pleadings have expressed the relief she has sought throughout the litigation, the arguments have not been drafted artfully in a legal context.[2]
When the property was transferred to defendant from her mother's estate on November 13, 2001, she immediately began to gather the money necessary to pay the delinquent taxes. At the time, the amount due was $4,330.88, plus interest. Defendant was unable to raise the full amount and asked the tax collector for a payment plan. Although defendant is a lifelong resident of the City with strong ties to the community, the tax collector declined defendant's offer to pay the taxes on an installment plan.[3]
On August 26, 2002, the City Council adopted a resolution authorizing Corporation Counsel to foreclose on a number of properties. The resolution listed defendant's property and stated that $5,056.15 was the amount required to redeem the tax sale certificate. At oral argument before us, defendant represented that she attempted to pay that amount but the tax collector refused the payment, stating that the amount due was greater. Counsel for the City did not dispute defendant's representation.
When the City filed the foreclosure action on March 21, 2003, defendant represented that the amount stated in the complaint was the same as that listed in the August 26, 2002 resolution, $5,056.15, to redeem the tax sale certificate. On April 3, 2003, the City stated the same amount in the foreclosure notice published in the Star-Ledger. Thus, the City Council's resolution, the complaint in foreclosure and the published notice of foreclosure all stated that the amount necessary to redeem the tax sale certificate and avoid foreclosure was $5,056.15. Defendant represents that no notice was given to her stating additional amounts necessary to redeem the tax sale certificate.
Nevertheless, defendant represents that the tax collector refused to accept the published amount, advising defendant that two additional tax periods had passed between the time of the resolution and the foreclosure complaint, and defendant was required to pay the entire amount in order to redeem the tax sale certificate.[4] Moreover, the City advised defendant that she had to pay $850 in legal fees, along with the back taxes plus 18% interest in order to redeem the tax sale certificate, notwithstanding the judgment of foreclosure which approved only $798 in legal fees.
Defendant represents that in August 2004, Corporation Counsel indicated that the City was willing to settle the matter. *50 When defendant attempted to arrange a meeting to discuss a settlement, however, City personnel would not schedule it. Defendant further represented at oral argument before us that after the judgment of foreclosure was entered, the City offered to sell her property to a developer for $30,000. When defendant offered to pay the City the same amount, however, her offer was refused. Defendant continues to live in the residence and has paid all other municipal fees, including water and sewer. The City has not evicted defendant from the property presumably because of the continuing litigation.
Rule 4:50-1(f) provides that
[T]he court may relieve a party ... from a final judgment or order for the following reasons
....
[f] Any other reason justifying relief from the operation of the judgment or order.
Rule 4:50-2 requires that a R. 4:50-1 motion "be made within a reasonable time." Here, within days of the final judgment, defendant attempted to pursue her cause through the Appellate Division and the Supreme Court, apparently unaware of the relief available under R. 4:50-1(f). By February 2005, however, less than a year after the judgment was entered, defendant moved before the trial court to vacate the judgment under R. 4:50-1(f) and raised due process issues of a constitutional dimension. We disagree with the trial judge's determination that defendant's only option at this juncture is to pursue her constitutional arguments through the federal system.
Rule 4:50-1(f) provides relief in exceptional circumstances.
No categorization can be made of the situations which warrant redress under subsection (f).... [T]he very essence of
(f) is its capacity for relief in exceptional situations. And in such exceptional cases its boundaries are as expansive as the need to achieve equity and justice. [Court Inv. Co. v. Perillo, 48 N.J. 334, 341, 225 A.2d 352 (1966); See also Housing Auth. v. Little, 135 N.J. 274, 285-86, 639 A.2d 286 (1994); Jersey City Mgmt. v. Garcia, 321 N.J.Super. 543, 545, 729 A.2d 521 (App.Div.1999).]
"In order to obtain relief under this subsection, the movant must show that the circumstances are exceptional and that enforcement of the order or judgment would be unjust, oppressive or inequitable." Pressler, Current N.J. Court Rules, comment 1.7 on R. 4:50-1 (2006); Johnson v. Johnson, 320 N.J.Super. 371, 378, 727 A.2d 473 (App.Div.1999); Woodrick v. Jack J. Burke Real Estate, Inc., 306 N.J.Super. 61, 77-78, 703 A.2d 306 (App.Div.1997), certif. granted, 153 N.J. 214, 708 A.2d 65, and app. dismissed, 157 N.J. 537, 724 A.2d 799 (1998); Quagliato v. Bodner, 115 N.J.Super. 133, 138, 278 A.2d 500 (App. Div.1971).
Given the facts presented, we are satisfied that defendant has demonstrated exceptional circumstances and that enforcement of the foreclosure judgment would be "unjust, oppressive [and] inequitable." Defendant was denied due process in that she was never given a hearing on the issues raised in her "motion to show cause" filed in response to the foreclosure complaint to determine whether she was denied due process because the foreclosure notices indicated that she could redeem the tax sale certificate and avoid foreclosure by paying $5,056.15.
The record before us demonstrates that the resolution adopted by the City on August 27, 2002 stated that the amount of the tax sale certificate was $4,330.88 and the amount of subsequent liens, penalties and costs was $725.27, bringing the total *51 amount required to redeem to $5,056.15. We have not been provided with a copy of the notice published in the Star-Ledger or the foreclosure complaint, but defendant represents, and the City does not dispute, that both the notice and the complaint stated that defendant could avoid foreclosure by paying $5,056.15.
Defendant represents that she had borrowed the amount stated in the published notice in order to redeem the tax sale certificate, but the City refused payment because additional taxes and penalties had accrued in the time between the resolution and the notice. We consider it fundamentally unfair and a violation of due process if the City required payment in an amount above that stated in a complaint and published notice.
Rule 4:4-5(c) allows for service of the complaint by publication and N.J.S.A. 54:5-104.42 declares that
service and posting of notice as provided by the Rules Governing the Courts of the State of New Jersey shall be notice to the world including all persons claiming any right, title, interest in or lien upon the land ... and that unless said land[] be redeemed ... in the cause ... the right, title, interest or lien ... shall be foreclosed and forever debarred ... by the judgment....
"It is beyond question that any procedure which deprives an individual of a property interest must conform to the dictates of the Due Process Clause." Tp. of Montville v. Block 69, Lot 10, 74 N.J. 1, 8, 376 A.2d 909 (1977) (citations omitted). "Accordingly, the United States Supreme Court has held that procedural due process applies where state law does not entirely extinguish the taxpayers' property interest until foreclosure." Ibid. "In New Jersey, as elsewhere, `[t]he essential components of due process are notice and an opportunity to be heard.'" First Resolution Inv. v. Seker, 171 N.J. 502, 513-14, 795 A.2d 868 (2002) (quoting Mettinger v. Globe Slicing Mach. Co., 153 N.J. 371, 389, 709 A.2d 779 (1998)). "Fundamentally, due process requires an opportunity to be heard at a meaningful time and in a meaningful manner." Doe v. Poritz, 142 N.J. 1, 106, 662 A.2d 367 (1995).
"At a minimum, due process requires that a party in a judicial hearing receive `notice defining the issues and an adequate opportunity to prepare and respond.'" H.E.S. v. J.C.S., 175 N.J. 309, 321, 815 A.2d 405 (2003) (quoting McKeown-Brand v. Trump Castle Hotel & Casino, 132 N.J. 546, 559, 626 A.2d 425 (1993)). "There can be no adequate preparation where the notice does not reasonably apprise the party of the charges, or where the issues litigated at the hearing differ substantially from those outlined in the notice." Dep't of Law and Pub. Safety v. Miller, 115 N.J.Super. 122, 126, 278 A.2d 495 (App.Div.1971). Due process is "a flexible [concept] that depends on the particular circumstances." Doe, supra, 142 N.J. at 106, 662 A.2d 367.
Applying these principles to the case before us, we find that if defendant's representations are accurate, she was deprived of her due process rights. N.J.S.A. 54:5-59 provides that "the amount required for redemption shall include all subsequent municipal liens." In our view, due process requires the municipality to include the amount of subsequent liens in the foreclosure complaint and published notice so that a person with an interest in the property will be apprised of the amount actually required to redeem the tax sale certificate and avoid foreclosure. When the amount listed in the published notice and foreclosure complaint merely parrots the amount recited in the City's resolution, without including the amount of *52 the subsequent liens, penalties and costs, the taxpayeror any other person with an interest in the propertyis not given adequate notice and is thereby denied due process. In other words, to comply with due process, the complaint and published notice must advise the taxpayer of the total amount he or she must pay to avoid foreclosure. The taxing entity may satisfy the due process requirement by stating the amount in the resolution, plus the amount of taxes, penalties and costs due each quarter, so that the taxpayer may readily calculate the total amount necessary to avoid foreclosure.
We consider the published notice and the complaint in foreclosure fatally defective if the amount stated to redeem the tax sale certificate did not include the subsequent liens, penalties and costs. "While the importance of the government's taxing power cannot be ignored, we must not forget that governmental concern for convenience or simplicity does not outweigh individual rights." Tp. of Montville, supra, 74 N.J. at 14, 376 A.2d 909. "In dealing with the public, government must `turn square corners.'" F.M.C. Stores Co. v. Borough of Morris Plains, 100 N.J. 418, 426, 495 A.2d 1313 (1985) (quoting Gruber v. Mayor and Tp. Comm., 73 N.J.Super. 120, 179 A.2d 145 (App.Div.), aff'd, 39 N.J. 1, 186 A.2d 489 (1962)). Accordingly, we reverse the order of March 16, 2005, and remand to the trial court for an evidentiary hearing to determine whether the published notice and the complaint included the full amount necessary to redeem as of their respective dates. If they do not, the foreclosure judgment shall be vacated.
With respect to the trial judge's order that defendant is prohibited from filing any further motions in this action without approval of the assignment judge, we appreciate the trial judge's frustration in dealing with repeated motions, given the caseload in General Equity. Indeed, we have previously held that "an Assignment Judge can prevent the filing of a complaint, or issuance of a summons thereon, when the plaintiff's prior litigation demonstrates a pattern of frivolous pleadings." Rosenblum v. Borough of Closter, 333 N.J.Super. 385, 387, 755 A.2d 1184 (App. Div.2000). Nevertheless, we are persuaded that defendant's efforts to protect the property that has been in her family since 1903 should not be hampered merely because the trial court dockets are overburdened. Consequently, we reverse that portion of the March 16, 2005 order, as well, but remind defendant that she may be sanctioned for filing frivolous applications. N.J.S.A. 2A:15-59.1; R. 1:4-8.
Finally, with respect to defendant's representation that the City offered to sell the property to a developer for $30,000 but refused to accept her offer to pay the same amount for clear title, we do not have a record upon which to determine whether such conduct violates the equal protection clauses of the United States Constitution[5] and/or the New Jersey Constitution[6] and that issue must be addressed in the trial court. Accordingly, we remand the issue to the trial court for an evidentiary hearing.
To summarize our decision: the order of March 16, 2005, is reversed and the matter is remanded for a determination of (1) whether defendant was denied her due process rights because the complaint and published notice failed to state the full amount required to redeem the tax sale certificate and avoid foreclosure and (2) whether defendant's equal protection rights were violated because the City offered *53 to sell the property post-judgment to a third party but refused to accept defendant's offer to pay the same amount.
NOTES
[1] This case was originally argued before Judges Stern and Parker. Judge Miniman participated in the disposition after one party consented and the other did not respond to our invitation to have further telephonic argument.
[2] Apparently, defendant's inartful arguments resulted in the trial and appeals courts consistent denial of defendant's applications.
[3] N.J.S.A. 54:5-59 allows for payment of back taxes and redemption of tax sale certificates on an installment plan "with the consent of the governing body."
[4] N.J.S.A. 54:5-59 requires that all subsequent liens must be paid before a taxpayer can redeem a tax sale certificate.
[5] U.S. Const. amend. XIV, ¶ 1.
[6] N.J. Const. Art.1 ¶ 1.