**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1782-24

MICHAEL HACKETT,

     Plaintiff-Respondent,

v.

ERIKA HACKETT,

     Defendant-Appellant.

_____

Submitted December 2, 2025 – Decided February 26, 2026

Before Judges Gooden Brown and Torregrossa-O'Connor.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Hudson County, Docket No. FM-09-0317-21.

Shaw Divorce & Family Law LLC, attorneys for appellant (Sarah C. Mulrean, on the briefs).

Puccio & Fiorello LLC, attorneys for respondent (Linda Couso Puccio, on the brief).

PER CURIAM

In this post-judgment matrimonial matter, defendant Erika Hackett appeals from a January 24, 2025 Family Part order denying her motion to vacate a May 24, 2024 order recalculating her child support obligation, as well as that of her ex-husband, plaintiff Michael Hackett, retroactive to August 31, 2018. Having reviewed the record in light of applicable legal principles, we affirm.

I.

On February 19, 2005, the parties married. They had three children—a son and two daughters. They divorced on May 18, 2015, and their Dual Final Judgment of Divorce (FJOD) incorporated their Marital Settlement Agreement (MSA). The MSA established the parties' joint legal custody of the children and designated defendant the parent of primary residence for all three children, affording plaintiff parenting time.

The MSA fixed plaintiff's obligation at $255 per week pursuant to the child support guidelines and reflected "[plaintiff's] obligation to pay child support to [defendant] shall continue until the children are emancipated." The parties agreed to "exchange income information" upon the termination of plaintiff's alimony obligation on August 30, 2018, and to review child support under current child support guidelines upon each child's high school graduation.

A-1782-24

The MSA also provided for review of child support at "any other time permitted" by New Jersey law.

A. May 2024 Child Support Order[1]

An extensive post-judgment motion history followed, spanning roughly a decade. Relevant here, defendant moved in May 2020 for modification of the parties' child support obligations retroactive to August 31, 2018, the conclusion of plaintiff's alimony payments to defendant. Various delays slowed the court's addressing the motion until early 2024. During the interim, the parties' son began residing with plaintiff in September 2021, while their daughters remained with defendant.

In furtherance of adjusting child support for relevant changes in circumstances, the court[2] entered a series of orders to marshal relevant information directing in part the parties provide an updated Case Information

---

[1] The May 2024 motion decision is not before us on appeal, as defendant's notice of appeal lists only the January 24, 2025 order denying her motion to vacate this order. See R. 2:5-1(f)(2)(ii) (providing the Notice of Appeal "shall . . . designate the judgment, decision, action, or rule, or part thereof . . . from . . . which the appeal is taken"). Thus, we summarize the pertinent procedural history and substantive determinations merely to contextualize defendant's arguments concerning the motion to vacate decision.

[2] The same judge to whom this matter was transferred in early 2024 handled the motion and entered all orders relevant to this appeal.

Statement (CIS) "as of September[] 2021" in order to assess the impact on child support of the parties' son residing with plaintiff, an updated CIS and tax information for 2018-19 to address support between August 2018 to September 2021, and then-current 2024 CIS submissions. In an April 12, 2024 order the court advised it "does not typically retroactively calculate child support for each individual year but rather uses the financial information from the most current applicable year."[3]

Describing plaintiff's income as "sporadic," defendant requested the court average plaintiff's income for a three-year period. The court then entered an order requiring plaintiff to properly file certain documents and information, including his 2018 CIS and tax documents, and respond by letter to defendant's claims regarding "sporadic" income.

After an extension of time was granted, plaintiff's counsel sent a May 21, 2024 letter confirming all documents had been "uploaded," including "plaintiff's 2018 [CIS]"; "plaintiff's 2018 Income Tax Returns"; and "plaintiff's certification

_____

[3] We do not address the court's methodology, as defendant does not challenge on appeal the formula employed by the court. See Sklodowsky v. Lushis, 417 N.J. Super. 648, 657 (App. Div. 2011) ("An issue not briefed on appeal is deemed waived.").

addressing income and parenting time."[4]  In a certification plaintiff claimed he did not consider his 2021 income sporadic, describing his various sources of employment income, and describing certain events over the years, such as the COVID-19 pandemic, impacting his income.

The parties disputed the amount of parenting time exercised by each over the relevant time span.  Each accused the other of making parenting time "difficult" or "impossible."

On May 24, 2024, the motion court entered a detailed order and written opinion comprehensively addressing child support, including five pages of child support calculations.[5]  The calculations addressed three time periods, dating back to August 2018, and took into consideration the precise number of weeks and days in each time segment, the parties' incomes based on their submitted financial statements and other financial and tax documents, health insurance contributions, and overnights with the children.  The court indicated the parties

_____

[4]  Plaintiff's 2018 CIS is not included in the record before us.  Defendant contends plaintiff did not provide the document to the motion court, while plaintiff alleges he filed the document, presenting an eCourts printout of the case jacket reflecting his counsel's cover letter and attachment.

[5]  Although no transcript is included within the appellate record as the decision is not before us, the court's order notes oral arguments were heard on the motion.

A-1782-24

successfully mediated and resolved custody and parenting time issues by various consent orders.

The court's accompanying written opinion recognized the long motion history but observed many of the delays were not attributable to the parties. The court also specifically found the parties had "ample opportunity to fully explicate the basis for all relief" sought throughout their multiple filings. The court added "[t]o the extent [it] did not have all the necessary data to calculate the parties' obligations," it set forth the reasoning for each award.

The court then concluded, for the period between August 31, 2018 to September 1, 2021, plaintiff owed support in the amount of $329 weekly for the three children, increased from $255 per week, with total arrears owed by plaintiff to defendant in the amount of $11,812.86. The court explained it derived defendant's income from her 2018 CIS and plaintiff's from his 2019 CIS, indicating plaintiff failed to produce his 2018 CIS. Regarding overnights, the court credited "defendant['s] claims [that] plaintiff did not take advantage of his allotted parenting time and [only] exercised [twenty-two] actual overnights in 2018, [eighteen] overnights in 2019, [sixteen] overnights in 2020, and [thirty] overnights in 2021." The court therefore found "plaintiff exercised an average of [twenty-one and one half] overnights per year."

6

For the period between September 1, 2021 to December 31, 2023, the court relied upon "the parties' 2024 [CIS] and supporting documents," as it did for the time from January 1 to April 16, 2024. The court noted the parties presented no "unique circumstances . . . in their multiple submissions," so the court "relie[d] on current financial information."

The court detailed the basis for its calculations and determined plaintiff owed $320 per week in support to defendant for the parties' two daughters. Accounting for the parties' son's transfer of primary residence to plaintiff in 2021, the court found defendant owed plaintiff $293 per week in support for their son, crediting defendant forty-eight overnights with their son (two overnights twice monthly). The court thus concluded plaintiff owed defendant only $27 weekly and overpaid defendant by $228 per week, resulting in defendant's owing plaintiff $31,236 in arrears.

For the period between January 1 and April 16, 2024, the court found plaintiff owed defendant $342 per week for the parties' two daughters, noting "[p]laintiff exercised no parenting time with [the two daughters]" during this time period. The court also determined defendant owed plaintiff $293 per week for their son. Accordingly, the court calculated plaintiff overpaid defendant $206 weekly, resulting in defendant owing plaintiff $3,119.43 in arrears.

Finally, for the period between April 16 and December 31, 2024, the court calculated plaintiff owed defendant $340 per week for the parties' two daughters, finding "[a]s of May 21, 2024, plaintiff has exercised [two] overnights with the [two daughters] for a period of [five] months[,] . . . extrapolating that figure to [twelve] months for a total of (approximately) [five] overnights." The court concluded defendant owed $276 per week for the parties' son. The court found this resulted in plaintiff's "overpa[ying] by $191 per week[] [f]or the period of April 16, 2024 – May 24, 2024, [and] defendant['s] ow[ing] plaintiff $1,036.86 in arrears."

The court summarized the total calculations as requiring defendant pay plaintiff $23,579.43 for the period of August 31, 2018 to May 24, 2024. The court then ordered "[e]ffective the date of this order, plaintiff's [net] child support obligation to defendant is $64 per week."

B.  Defendant's Motions for Reconsideration (August and October 2024)

Prior to moving to vacate the May 24, 2024 order, defendant sought reconsideration on two occasions.[6] Relevant to this appeal, defendant asserted

---

[6]  We discuss the reconsideration motions preceding defendant's motion to vacate the May 2024 child support order solely for context as they were not challenged on appeal.

plaintiff presented false and misleading financial information across his financial submissions, thus undermining the validity of the court's calculations.

On August 2, 2024, the court entered a seven-page written order granting in part and denying in part defendant's first motion to reconsider the May 24, 2024 order. Before individually addressing each of the approximately eighteen grounds for reconsideration alleged by defendant, the court noted "[t]o the extent that the court is denying defendant's request for reconsideration, there is [a] paucity of content" and "[n]o support for the figures" defendant posited in support of her arguments. Emphasizing "[t]he matter was extensively briefed with many voluminous submissions," the court noted it remained "neither able nor required to divine the intent of what [defendant was] relying on" because she had the "obligation to state [her] case." The court explained defendant, despite being self-represented, "[wa]s nonetheless required to comply with" the court's rules regarding the requirements of submission attachments.

Accordingly, the court rejected seventeen of defendant's eighteen alleged bases for reconsideration largely due to her failure to attach any evidence supporting her contentions. However, the court recognized a single error regarding entry of the parties' gross taxable income impacting certain calculations. Accordingly, the court amended its May 24, 2024 order,

9

recalculating each of the support figures in light of this error. This reduced the arrears defendant owed plaintiff to $11,072.86.

Defendant then moved for reconsideration of the August 2, 2024 order, which the court denied in a three-page written order on October 18, 2024 without oral argument. Defendant's application again sought "correction of several errors, oversights and mistakes made within the court's decision" due to allegedly inaccurate "reporting and verification of income and evidence previously submitted." The court found "[m]uch of what [wa]s asserted . . . could – and should – have been raised in the prior applications and [defendant's] concession that she failed to do so is noteworthy."

Further, the court noted it had "conducted now several painstaking analyses of the voluminous documentation provided by defendant all focused exclusively on the best interests of the children." It found "[t]here are no new facts or overlooked law presented" as "this application is yet another in a series of requests seeking to change that [with] which defendant does not agree." The court specified, "[t]o the extent defendant seeks to conduct discovery to verify information" in plaintiff's CIS, "[n]o such relief has been sought" so the court would not authorize post-judgment discovery. After individually addressing the

10

arguments, the court again reminded defendant self-represented litigants are "required to comply with all rules of procedure."

C. Defendant's Motion to Vacate (January 2025)

On December 10, 2024, defendant filed a notice of motion seeking the court to (1) vacate the May 24, 2024 order pursuant to Rule 4:50-1(c) and (f)[7]; (2) "order[] plaintiff to file and serve his 2018 [CIS] along with his 2018 Federal and State Tax Returns, W-2 Statement(s), and 1099's"; (3) "schedul[e] th[e] matter for a plenary hearing to resolve all disputes regarding calculation of child support"; and (4) compel plaintiff to "reimburse defendant for her counsel fees and costs incurred in connection with this motion."

Defendant argued the May 2024 support order should be vacated because plaintiff intentionally presented inaccurate financial information, significantly

---

[7] Rule 4:50-1 provides:

> On motion, with briefs, and upon such terms as are just, the court may relieve a party or the party's legal representative from a final judgment or order for the following reasons: . . . (c) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; . . . or (f) any other reason justifying relief from the operation of the judgment or order.
>
> [(Emphasis added).]

A-1782-24

misrepresenting his income for 2019 and 2023, in particular. She further complained her attempts to secure increased child support over the years were thwarted by plaintiff's "prey[ing]" on her self-represented status, and "ma[king] sure [her] application was denied based on [her] procedural errors."

Defendant criticized delays in the proceedings and claimed the motion court, in finally addressing child support in 2024, lacked the full and accurate information necessary to make its determination. She contended plaintiff "refus[ed] to file his 2018 CIS" or related financial documents, which prevented the court from "properly calculat[ing] plaintiff's child support obligation for the period of time between August 2018 to September 2021." She claimed the court "rewarded" plaintiff for not doing so.

Defendant also argued "plaintiff's alleged income amounts . . . [we]re blatantly false," claiming substantial misrepresentations were made in plaintiff's CIS submissions across the relevant years. She asserted plaintiff historically "refused to acknowledge or respond to any of [her] substantive claims . . . and instead demanded that [her] application be denied" because "he preyed" on her self-represented status. Regarding her earlier reconsideration motion submissions, defendant contended she "was unaware of the requirement to resubmit documents that [she] had previously filed with the court . . . and [she]

attempted to reconcile this mistake by submitting the required documents" to the Judiciary Electronic Document Submission system, "along with [her] reply certification." She asserted in her second reconsideration motion she "includ[ed] all exhibits properly attached" and "highlighted significant errors in . . . plaintiff's income reporting due to misrepresentations within his CIS."

She argued plaintiff nonetheless again took advantage of her inability to afford counsel and "ensured that [her] applications for reconsideration were denied based on [her] own ignorance to the legal system and to certain procedural requirements." Defendant added plaintiff's "deductions were overstated." She asserted that as a result of plaintiff's "willful[] conceal[ment] and misrepresent[ations], . . . the child support obligation and arrears determination[s] set forth in the court's May 24[, 2024] order, and subsequently revised in the August 2[, 2024] order, should be considered inaccurate and void."

As for her request for counsel fees, she asserted plaintiff's alleged "bad faith throughout this litigation" in his "repeated[] . . . fraudulent conduct" warranted an award of counsel fees.

On December 20, 2024, plaintiff filed a notice of cross motion seeking the court deny defendant's motion and award counsel fees to plaintiff for "all motions filed by defendant from April[] 2024 to the present." Plaintiff certified

"the basis for relief under R[ule] 4:50-1 is factually incorrect" because he "did indeed file and serve all documentation required by the court, including the 2018 CIS." Plaintiff argued these "documents are part of the court's record" and, thus, "defendant is the one making a misrepresentation" by arguing plaintiff did not provide these documents. Plaintiff asserted "defendant has had numerous opportunities to argue her case" and either failed to do so, or "the court rejected her arguments." Further, plaintiff claimed defendant "continue[d] to waste the court's time . . . as well as cause [him] to incur legal fees, by making the same arguments, or variations thereof, over and over again."

In her reply certification defendant submitted plaintiff's 2019 CIS, which included plaintiff's 2018 Federal Tax Return, 2018 State Tax Return, 2018 1099 document, and 2018 W-2 Statement. She certified plaintiff never submitted his 2018 CIS, but instead provided his 2019 CIS and 2018 tax documents, which, she claimed, "reflect[ed] a deliberate attempt to distort facts." She contended discrepancies between plaintiff's tax returns and CIS submissions remained unaddressed, and "plaintiff provide[d] no explanation and relie[d] on procedural technicalities and irrelevant arguments to mislead the court."

On January 24, 2025, the motion court entered a written order, with an accompanying addendum, denying defendant's motion in its entirety and

similarly denying plaintiff's request for attorney's fees. The court acknowledged the procedural history and the prior motions for reconsideration. Further, the court noted: "To the extent defendant's current application states there was no activity in this matter from 2020 through 2024, it is incorrect and nothing prevented the filing of an application seeking relief."

The court emphasized its May 24, 2024 order "provided a statement of . . . reasons for the numbers used in the several child support calculations." The court rejected defendant's claim it recalculated child support without sufficient documentation. In particular, the court observed "defendant most certainly had the 2018 [CIS] because her first issue with the May 24, 2024[] order" concerned "portions of the 2018 [CIS]," which was "filed with the court by plaintiff's counsel before the adjudication of the May 24, 2024[] order," and which "remains available on eCourts." Further, the court alternatively noted "concerns advanced by defendant on this application related to plaintiff's income for the 2018 time period[,] are all addressed in the 2019 tax documents . . . filed by plaintiff's counsel prior to the May 24, 2024[] order and . . . readily available on eCourts."

The court added defendant never sought "discovery to verify information," and found she instead offered only "conclusory statements in the

15

form of her opinion on the content provide[d] by plaintiff" and nakedly alleged "fraud by simply challenging numbers provided by plaintiff." The court cited its prior reconsideration decisions in which it rejected similar claims of discrepancies in plaintiff's income information. The court stated, "At some point, repeated attempts seeking the same relief must end."

Accordingly, the court "readily dispose[d] of" defendant's claims as "defendant ha[d] offered nothing by way of competent evidence under R[ule] 1:6-6 of fraud." The court determined "[t]here [wa]s nothing new presented of a factual nature warranting reconsideration of the May 24, 2024[] order presented on this application." Further, the court found defendant had not shown exceptional circumstances under Rule 4:50-1(f).

Lastly, the court found "nothing presently in dispute warranting a plenary hearing" based on the "exhaustive adjudication of all then-pending issues in the May 24, 2024" order, noting defendant "only ma[de] naked allegations of opinion," which she has never sought to explicate through discovery. Thus, the court concluded "defendant['s] rais[ing] this issue on the third round of motions on her dissatisfaction with the May 24, 2024[] ruling does not provide a basis for a plenary hearing."

II.

Defendant argues on appeal the trial court erred in denying her motion to vacate the May 2024 child support order because: defendant demonstrated her right to relief under Rule 4:50-1(c) and (f); the motion court failed to enforce its order requiring plaintiff submit a 2018 CIS and related attachments; and defendant was denied a plenary hearing and oral argument despite showing genuine disputes regarding plaintiff's income.

III.

"The scope of appellate review of a trial court's fact-finding function is limited." In re D.L.B., 468 N.J. Super. 397, 416 (App. Div. 2021) (quoting Cesare v. Cesare, 154 N.J. 394, 411 (1998)). We "accord particular deference to the Family Part because of its 'special jurisdiction and expertise' in family matters." Harte v. Hand, 433 N.J. Super. 457, 461 (App. Div. 2013) (quoting Cesare, 154 N.J. at 413). "[F]indings [of fact] by the trial court are binding on appeal when supported by adequate, substantial, credible evidence." Cesare, 154 N.J. at 411-12 (citing Rova Farms Resort, Inc. v. Invs. Ins. Co., 65 N.J. 474, 484 (1974)). Questions of law, however, are reviewed de novo. See Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

A-1782-24

Regarding motions to vacate, "[a] trial court's determination under [Rule 4:50-1] warrants substantial deference, and should not be reversed unless it results in a clear abuse of discretion." U.S. Bank Nat'l Ass'n v. Guillaume, 209 N.J. 449, 467 (2012). An abuse of discretion occurs when a decision is "made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis." Barr v. Barr, 418 N.J. Super. 18, 46 (App. Div. 2011) (quoting Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002)). Rule 4:50-1 is "designed to reconcile the strong interests in finality of judgments and judicial efficiency with the equitable notion that courts should have authority to avoid an unjust result in any given case." Mancini v. EDS, 132 N.J. 330, 334 (1993) (quoting Baumann v. Marinaro, 95 N.J. 380, 392 (1984)). "Regardless of the basis, vacation of a judgment under Rule 4:50-1 should be granted sparingly." In re Guardianship of J.N.H., 172 N.J. 440, 473-74 (2002).

Against this backdrop, we discern no abuse of discretion in the motion court's denying defendant's motion to vacate without a plenary hearing. We are satisfied the court, deeply familiar with the history of the child support litigation, concluded relief was not warranted under either Rule 4:50-1(c) or (f).

As to defendant's argument the court should have granted the motion to vacate because of plaintiff's alleged fraudulent misrepresentation of his financial

18                                                                        A-1782-24

information, the record amply supported the court's finding defendant's claims were fatally belated, redundant, and unpersuasive. Rule 4:50-1(c) allows for relief "from a final judgment or order" in cases involving "fraud[,] . . . misrepresentation, or other misconduct of an adverse party." A movant seeking relief under this subsection has the burden of proving the existence of fraud or misrepresentations by clear and convincing evidence. City of Linden, Cnty. of Union v. Benedict Motel Corp., 370 N.J. Super. 372, 396, 389 (App. Div. 2004).

"Clear and convincing evidence is evidence that produces . . . a firm belief or conviction that the allegations sought to be proved by the evidence are true." Bhagat v. Bhagat, 217 N.J. 22, 46 (2014) (quoting Model Jury Charges (Civil), 1.19, "Burden of Proof – Clear and Convincing Evidence"). This standard requires "evidence so clear, direct, weighty in terms of quality, and convincing as to cause [one] to come to a clear conviction of the truth of the precise facts in issue." Ibid. (quoting Model Jury Charges (Civil), 1.19). The record demonstrates defendant failed to meet this standard.

Preliminarily, we note the court found plaintiff filed voluminous financial records and information, including his 2018 CIS, prior to the court's May 24, 2024 order. Nonetheless, in denying defendant's motion to vacate, the motion

court also properly emphasized "the concerns advanced by defendant . . . related to plaintiff's income for the 2018 time period are all addressed in the 2019 tax documents (which address . . . plaintiff's income in 2018), which were filed by plaintiff's counsel prior to the May 24, 2024[] order and also readily available . . . to defendant[]." Further, the motion court's January 24, 2025 order, as well as its orders and findings on defendant's prior motions for reconsideration, show the court utilized plaintiff's 2018 tax filings in making its calculations. Thus, we discern no basis to disturb the motion court's finding defendant failed to demonstrate any allegedly omitted or false information skewed the court's child support calculations.[8] In particular, we perceive no error in the court's finding defendant failed to show by clear and convincing evidence fraud or misrepresentation by plaintiff.

Here, the record supports the motion court's reasonable finding defendant raised only untimely "naked allegations of opinion" regarding fraud and misrepresentation. Although defendant contends she established a substantial

---

[8] It merits noting defendant's brief argues only that the court never enforced plaintiff's obligation to provide a 2018 CIS and, "as a result," the court did not "properly calculate" child support from 2018 to 2021. Without more, we cannot discern the flaw to which defendant eludes, particularly as defendant concedes in her reply brief that plaintiff in fact submitted the 2018 CIS on May 21, 2024, three days prior to the court's issuing its decision.

20

discrepancy[9] between plaintiff's disclosed income in his 2019 and 2024[10] CIS submissions and that reported in his corresponding tax filings for those years, the record reflects plaintiff filed all these documents with the court prior to its May 24, 2024 order, giving defendant access to the same information. Thus, plaintiff's submission to the court of the very documents defendant contends demonstrate his alleged fraud undermines defendant's claims of misrepresentation and concealment.

The court also reasonably emphasized defendant never sought discovery of plaintiff's actual financial circumstances to further investigate the veracity of plaintiff's financial submissions. Thus, the court found unpersuasive defendant's claims of plaintiff's misrepresentations and fairly concluded "[i]f defendant sought discovery to explicate her belief of 'fraud' in the numbers presented by plaintiff, then . . . it was incumbent on defendant . . . to identify what discovery is sought and nothing was either sought or provided to this court."

---

[9] On this point, we note our review of plaintiff's CIS submissions and corresponding tax documentation reflecting his income in the relevant years does not confirm the vast discrepancies alleged by defendant.

[10] Defendant's brief takes issue with plaintiff's income and financial figures from 2019 and 2023; however, our review of her submissions satisfies us she is referencing plaintiff's 2019 CIS, with regard to his 2019 income, as well as his 2024 CIS, specifically as it pertains to his 2023 income.

Accordingly, the court found defendant failed to present any "competent evidence" of plaintiff's alleged false submissions. We will not disturb the court's determination defendant "fail[ed] to present any new information [which would] warrant[] relief under . . . R[ule] 4:50-l(c)."

We additionally conclude defendant's argument, claiming plaintiff "materially misrepresented the number of overnights exercised with the children," thereby "distort[ing] the resulting support calculations," is without merit. In making each calculation for the respective time frames as to overnights with specific children, the court largely accepted the figures defendant proposed or utilized the number of overnights to which the parties agreed in their parenting time mediation consent order. Indeed, at one point the court rejected plaintiff's proposed figure as "unsupported" and explained plaintiff failed to "provide competent evidence."

Further, we are unpersuaded by defendant's argument that "it was not possible for her to bring [plaintiff's] misrepresentations to the attention of the trial court before filing the motion to vacate." This contention is belied by the record demonstrating the motion court's continued orders gathering relevant information, inviting submissions by the parties, and extending repeated opportunities to the parties to amplify their positions.

A-1782-24

We likewise reject defendant's argument the court should have granted her relief under Rule 4:50-1's "catchall" provision, subsection (f), allowing the court to vacate a final judgment for "any other reason justifying relief from the operation of the judgment or order." R. 4:50-1(f). To warrant relief via this narrow corridor, the movant must demonstrate "the circumstances are exceptional, and that enforcement of the order or judgment would be unjust, oppressive, or inequitable." City of E. Orange v. Kynor, 383 N.J. Super. 639, 646 (App. Div. 2006); see also Nowosleska v. Steele, 400 N.J. Super. 297, 304 (App. Div. 2008). This is not such a case.

Here, the January 24, 2025 order found "there is nothing new presented . . . and what is presented in the current application does not rise to the level of exceptional circumstances." This conclusion is supported by the motion history and the motion court's reasoning in denying the motion to vacate.

The motion court painstakingly and comprehensively addressed the parties' submissions and arguments regarding adjustments to child support and elucidated in detail its calculations and findings supporting its May 24, 2024 child support order. Defendant then exercised at least three separate opportunities to challenge the May 24, 2024 order, which the motion court once again thoroughly considered—even adjusting several computation errors—

23                                                          A-1782-24

while also reasonably enforcing the court rules governing procedure and the content of the various submissions.

The motion court thus denied the motion to vacate finding the parties were given a meaningful opportunity to present their proposed calculations and arguments and confirmed the necessary financial documents were present in the court's record prior to, and formed the basis for, its May 24, 2024 order. The motion court also correctly noted defendant never sought additional post-judgment discovery. Accordingly, we discern no misuse of discretion by the court in declining to vacate its earlier order as defendant failed to show entitlement to the extreme relief afforded by Rule 4:50-1(f). As the motion court noted, "dissatisfaction" with the result cannot alone amount to "exceptional circumstances." Cf. D.M.C. v. K.H.G., 471 N.J. Super. 10, 26 (App. Div. 2022).

Regarding defendant's claim the motion court erred in failing to conduct a plenary hearing concerning the recalculation of child support, we are not persuaded. A plenary hearing is warranted when a party "clearly demonstrate[s] the existence of a genuine issue [of] material fact" through competent "supporting documents." Lepis v. Lepis, 83 N.J. 139, 159 (1980); see also Eaton v. Grau, 368 N.J. Super. 215, 222 (App. Div. 2004). We will not interfere with

A-1782-24

the motion court's decision to deny a plenary hearing rather than reopening in this matter the court had repeatedly and thoroughly considered and reaffirmed.

Similarly, we see no error in the motion court's deciding defendant's motion to vacate without oral argument. Generally, arguments are granted in the discretion of the motion court empowered to "exercise its discretion to deny such requests [for oral argument], even in cases involving 'substantive issues.'" Palombi v. Palombi, 414 N.J. Super. 274, 285 (App. Div. 2010) (quoting Mackowski v. Mackowski, 317 N.J. Super. 8, 14 (App. Div. 1998)). Such discretion

> is designed to give the judge "the option of dispensing with oral argument . . . when no evidence beyond the motion papers themselves and whatever else is already in the record is necessary to a decision. In short, it is the sole purpose of these rules to dispense with what is regarded as unnecessary or unproductive advocacy."
>
> [Ibid. (omission in original) (quoting Fusco v. Fusco, 186 N.J. Super. 321, 328-29 (App. Div. 1982)).]

Here, the motion court reasonably determined arguments were not warranted and its determination could be properly made based on the written submissions. We will not supplant our judgment for that of the motion judge who presided over four motions in less than a year concerning the very same subject matter.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Hadley*

Clerk of the Appellate Division

25

A-1782-24